UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:
CARMELO RAFAEL BATISTA,         Case no. 15-16067-BKC-LMI
    Debtor(s).         /   Chapter 7 Case

### SANTANDER CONSUMER USA, INC.'S MOTION FOR RELIEF FROM STAY

**ANY INTERESTED PARTY WHO FAILS TO FILE AND SERVE A WRITTEN RESPONSE TO THIS MOTION WITHIN 14 DAYS AFTER THE DATE OF SERVICE STATED IN THIS MOTION SHALL, PURSUANT TO LOCAL RULE 4001-1(C), BE DEEMED TO HAVE CONSENTED TO THE ENTRY OF AN ORDER GRANTING THE RELIEF REQUESTED IN THE MOTION**

Santander Consumer USA, Inc. (hereinafter Santander), pursuant to 11 U.S.C. 362(d)(1), moves for relief from the stay as follows:

1. On April 2, 2015, debtor(s) filed for Chapter 7 of the Bankruptcy Code.

2. On September 3, 2013, debtor Carmelo R. Batista and non-debtor Cecilia Castellanos executed a Retail Installment Sale Contract pertaining to the purchase of a **2008 BMW X3 UTILITY 4D 3.0SI AWD I6, VIN WBXPC93458WJ19697 (account no. xxxxxx6193)**. A copy of the contract is attached as Exhibit A. The assignment of the contract to Santander is located at the bottom of Page 4 of Exhibit A.

3. Santander noted its lien on the vehicle's title. Proof of title is attached as Exhibit B.

4. Debtor Carmelo R. Batista and non-debtor Cecilia Castellanos defaulted by failing to remit the monthly payments due for October 18, 2014 (partial payment in the amount of $274.72 due) and November 18, 2014 through April 18, 2015 in the amount of $673.24 each, plus late fees in the amount of $434.20

and miscellaneous fees in the amount of $70.00.

5. The payoff balance owed on this loan account is **$27,730.19,** as of April 29, 2015, excluding attorney fees and costs. An affidavit of indebtedness is attached as Exhibit C.

6. Santander Consumer USA, Inc. has been unable to verify insurance coverage on the vehicle.

7. A proposed order is attached as Exhibit D.

**WHEREFORE**, Santander requests an order under section 362(d)(1) modifying the stay so that Santander may repossess or replevy the vehicle, sell the vehicle, and apply the proceeds of the sale to the debt owed to Santander, and determining that Federal Rule of Bankruptcy Procedure 4001(a)(3) is not applicable and Santander may immediately enforce and implement the stay relief order.

**I HEREBY CERTIFY** that I am admitted to the bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that on May 5, 2015, copies of the foregoing were transmitted via ECF to Maria Yip, Trustee, and Robert Sanchez, Esq., attorney for debtor; and mailed to Carmelo Rafael Batista, debtor, and Cecilia Castellanos, non-debtor, 2207 West 69 Street, Unit # 1, Hialeah, FL 33016 and Cecilia Castellanos, non-debtor, 2207-1 West 69 Street, Hialeah, FL 33016.

> GERARD M. KOURI, JR., P.A.
> Attorney for SANTANDER
> 5311 King Arthur Avenue, Davie, FL 33331
> Tel: (954)862-1731, Fax (954)862-1732
>
> */s/ Gerard M. Kouri, Jr., Esq.*
> By: _____
> GERARD M. KOURI, JR., ESQ.
> FBN 375969

2

Printed 09/03/2013 06:01 pm 1 of 1

# CarMax® RETAIL INSTALLMENT CONTRACT

**Consumer Credit Sale**

Contract Number _____
Contract Date ___Sep 03, 2013___

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

Seller ___CarMax Auto Superstores, Inc., 1300 NW 98TH COURT, DORAL, FL 33172___
          Name                                          Address                                    Zip Code

Buyer ___CECILIA CASTELLANOS, 2207 1 W 69 ST, HIALEAH, FL 33016___
          Name                                          Address                                    Zip Code

Co-Buyer ___CARMELO R BATISTA, 602 HIALEAH DR, HIALEAH, FL 33010___
              Name                                      Address                                    Zip Code

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 4,000.00 |
|---|---|---|---|---|
| 24.99 % | $ 23,732.22 e* | $ 24,741.06 | $ 48,473.28 e* | $ 52,473.28 e* |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 673.24 | Monthly, beginning Oct 18, 2013 |

*e means an estimate

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the unpaid installment.

**Prepayment.** If you pay off the full amount owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in Item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term _____N/A_____ (in months)

I want the optional GAP contract.
Buyer Signs: _____

You agree to buy and we agree to sell you the following Vehicle:

Year/Make/Model  2008 BMW X3
VIN WBXPC93458WJ19697
New _____ Used ___X___

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household __X__
Business or Commercial _____ Agricultural _____

As part of this transaction, you sold the following vehicle(s) to Seller as a "Trade-In":

Year/Make/Model  N/A
VIN N/A
Year/Make/Model  N/A
VIN N/A

**YOUR PROMISE TO PAY**

You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| **A. CASH PRICE** | |
| 1.  Cash Price of Vehicle | $ 23,998.00 |
| 2.  Cash Price of CarMax Accessories | $ .00 |
| 3.  CarMax Processing Fee* | $ .00 |
| 4.  Sales / Excise Tax | $ 1,683.36 |
| 5.  Other:  Optional Electronic Filing Fee+ | $ 16.00 |
| 6.  Other: N/A | $ .00 |
| 7.  Total Cash Price [1 through 6] | $ 25,697.36 |
| **B. DOWNPAYMENT** | |
| 1.  Cash Downpayment | $ 4,000.00 |
| 2.  Manufacturer's Rebate | $ .00 |
| 3.  Credit From "Trade-In" Sold to CarMax | |
| a.  Value of "Trade-In" | $ .00 |
| b.  Pay-Off of "Trade-In" | $ .00 |
| c.  Net Value of "Trade-In" [a minus b, if a is greater than b] | $ .00 |
| 4.  Other: N/A | $ .00 |
| 5.  Total Downpayment [1 through 4] | $ 4,000.00 |
| **C. UNPAID BALANCE OF CASH PRICE [A minus B]** | $ 21,697.36 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | |
| 1.  Optional GAP Waiver Agreement | $ .00 |
| 2.  To Public Officials | |
| a.  License, Title and Registration Fees | $ 204.40 |
| b.  Filing Fees | $ 2.00 |
| c.  N/A | $ .00 |
| d.  Doc. Stamp Tax | $ 86.80 |
| e.  N/A | $ .00 |
| f.  Battery Fee | $ 1.50 |
| 3.  To Automotive Warranty Services of Florida, Inc. * for Extended Service Agreement | $ 2,749.00 |
| 4.  To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(b) minus B(3)(a)] | $ .00 |
| 5.  Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 4] | $ 3,043.70 |
| **E. AMOUNT FINANCED [C plus D]** | $ 24,741.06 |

*Seller may retain a portion of this amount.

+ This fee represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

Buyer's month of birth: October

Exhibit A

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials __CC__       Co-Buyer's Initials __CB__

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Applicable Law.** Federal law and the law of the State of Florida apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Charge.** You will pay a charge for any payment made by check that is not honored by your financial institution. After any notice required by law, the charge is: $25 if the face amount of the check is $50 or less; $30 if the face amount of the check exceeds $50 but is less than or equal to $300; $40 if the face amount of the check exceeds $300. If the face amount of the check exceeds $800, then the charge is 5% of the face amount of the check.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**Collection Costs.** If we refer this Contract for collection or enforcement to an attorney who is not our salaried employee, you agree to pay our reasonable attorney fees, plus court costs.

**Application of Payments, Partial Prepayments, and Deferred or Extended Payments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract. Because this is a simple finance charge contract you will be required to pay additional finance charge as a result of exercising an extension or deferment option.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.
Buyer's Initials _____     Co-Buyer's Initials _____

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

### ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:

- **ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.**
- **DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.**
- **YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").**
- **OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614. Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The party that initiates the arbitration shall pay the initial filing fee, and fees and costs thereafter shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver.** You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _____    Co-Buyer's Initials _____

## RETAIL INSTALLMENT CONTRACT
Other Important Agreements

### NO LIABILITY INSURANCE INCLUDED
LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.

YOUR INSURANCE INFORMATION

LIENHOLDER/LOSS-PAYEE Santander Consumer    INSURED'S NAME CECILIA CASTELLANOS

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 500.00    COLLISION $ 500.00

INSURANCE COMPANY WINDHAVEN INSURANCE COMPANY

POLICY NUMBER _____    EFFECTIVE DATE 09/03/2013    EXPIRATION DATE 03/03/2014

INSURANCE AGENT NAME A AND D INSURANCE GROUP CORP    TELEPHONE NUMBER _____

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### VEHICLE RETURN POLICY

You may return the Vehicle to CarMax for a refund and rescind this Contract within 5 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

### ENTIRE AGREEMENT

This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

Florida documentary stamp tax required by law in the amount of $ 86.80 has been paid or will be paid directly to the Department of Revenue. Certificate of Registration # _____.

**Notice to the Buyer**
1. Do not sign this Contract before you read it or if it contains any blank spaces.
2. You are entitled to an exact copy of the Contract you sign. Keep it to protect your legal rights.

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.

Seller  CarMax Auto Superstores, Inc.    Buyer's Signature X _____

By _____    Co-Buyer's Signature X _____

### ASSIGNMENT

Seller hereby sells, assigns and transfers to Santander Consumer _____ (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor _____

Date Sep 03, 2013    Title BOA

# Vehicle Information Check

| | |
|---|---|
| There is a STOP on the record found for the title or VIN that was entered. For more information, please contact the Customer Service Center at 850/617-2000. Hours of operation are Monday through Friday, 7 a.m. - 5 p.m. Eastern Standard Time. Please have the title or vehicle identification number available when you call. | |

## Vehicle Information:

| | | | |
|---|---|---|---|
| Vehicle Identification Number: | WBXPC93458WJ19697 | Year/Make: | 2008 BMW |
| Previous Title State: | FLORIDA | Registration Expiration Date: | 10/21/2015 |
| Title: | 101370822 | Title Issue Date: | 9/11/2013 |
| Title Status: | ACTIVE | Title Print Date: | 9/17/2013 |
| Odometer Reading/Status: | 52,714 ACTUAL MILEAGE | Odometer Date: | 9/3/2013 |
| Color: | WHITE | Vehicle Type: | AUTO |
| Net Weight: | 4,068 | Owner Information: | 2 owners joined by 'OR' |
| Electronic Title with Electronic Lien | | Salvage: | |
| Brands: | | | |

## Lien Information

| Name | Address | Date | Receipt Date |
|---|---|---|---|
| SANTANDER CONSUMER USA | PO BOX 961288 FORT WORTH, TX 76161- 0288 | 9/01/2013 | 9/11/2013 |

**If any of the information on this record needs to be corrected**, please contact your tax collector and complete appropriate paperwork to update the record.
**If you have lost or misplaced your title** and need to apply for a duplicate, click here for the form and instructions.



Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| In re: | Case No. 15-16067 |
|---|---|
| Carmelo Rafael Batista, | |
| Debtor(s) | Chapter 7 |

**AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF SANTANDER CONSUMER USA INC.'S MOTION FOR RELIEF FROM STAY**

Before me, the undersigned authority, personally appeared Marianne Favors, who, being duly sworn, deposes and says:

1.  I am Marianne Favors. I am employed as a Bankruptcy Specialist by Santander Consumer USA Inc. ("Creditor").

2.  This affidavit is based upon Creditor's loan payment records as of April 29, 2015. These records are regularly maintained in the course of business of Creditor and it is the regular practice of Creditor to make and maintain these records. These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records for Creditor and regularly use and rely upon them in the performance of my duties.

3.  Debtor maintains a loan, account number XXXX6193, with Creditor. Creditor holds a security interest in the following property:

    **2008 BMW X3-I6, VIN WBXPC93458WJ19697**

4.  The payments on this loan account, due for October 18, 2014 in the amount of $274.72, November 18, 2014 through April 18, 2015 in the amount of $673.24 each, late fees in the amount of $434.20 and miscellaneous fees in the amount of $70.00 have not been received by Creditor.

1

Exhibit C

5. The payoff balance owed on this loan account is $27,730.19, as of April 29, 2015, excluding attorney fees and costs.

6. Creditor does not have current verifiable proof of collision and comprehensive insurance covering the vehicle.

7. The contract and proof of title attached to this motion as exhibits are true and accurate copies of the original documents.

8. This concludes my affidavit.

_____
Marianne Favors

SWORN TO AND SUBSCRIBED TO before me under penalty of perjury as being true and correct based on the personal knowledge of Creditor's books and business records this ____4th____ day of ____May____, __2015__, by Marianne Favors, who is personally known to me.

NOTARY PUBLIC:

Sign: _Michelle Riggins_

Print: _Michelle Riggins_

State of Texas at Large

My Commission Expires: __11/22/15__

MICHELLE BREANNA RIGGINS
Notary Public, State of Texas
My Commission Expires
November 22, 2015

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:
CARMELO RAFAEL BATISTA,            Case no. 15-16067-BKC-LMI
     Debtor(s).            /   Chapter 7 Case

### ORDER GRANTING SANTANDER CONSUMER USA, INC. RELIEF FROM STAY

**THIS CAUSE** came before the Court on Santander Consumer USA, Inc.'s Motion for Relief from Stay. Santander Consumer USA, Inc. ("Santander"), pursuant to Local Rule 4001-1(A, B, and C), served the debtor(s), debtor's(s') attorney, and the Trustee with copies of the Motion for Relief from Stay and all exhibits to the motion. No objections to the requested relief have been served. Santander filed a certificate certifying the lack of any objections to or requests for hearing on the motion. Upon consideration of the motion and the record, it is

**ORDERED** that:

Exhibit D

1. The motion is granted and the stay imposed pursuant to 11 U.S.C. Section 362 is modified so as to allow Santander to repossess or replevy the **2008 BMW X3 UTILITY 4D 3.0SI AWD I6, VIN WBXPC93458WJ19697 (account no. xxxxxx6193)**, to sell the vehicle, and to apply the proceeds of the sale of the vehicle to the amount owed to Santander.

2. The stay is modified for the purpose of allowing Santander to obtain and sell the vehicle and to apply the proceeds of the sale to the indebtedness owed to Santander or to proceed in a Court of competent jurisdiction for the sole purpose of seeking <u>in rem</u> remedies. Santander shall not seek nor obtain any <u>in personam</u> judgment against the debtor(s).

3. Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is not applicable and Santander may immediately enforce and implement this order granting relief from stay.

###

Copies furnished via ECF to:

Gerard M. Kouri, Jr., Esq., counsel for Santander
Maria Yip, Trustee
Robert Sanchez, Esq., attorney for debtor

Attorney Kouri is directed to mail a conformed copy of this Order to Carmelo R. Batista, debtor, and Cecilia Castellanos, non-debtor, immediately upon receipt of this Order and shall file a certificate of service with the Clerk of the Court.